IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JACK WEAVER,<br><br>Plaintiff,<br><br>v.<br><br>BRENT MOEN, WILLIAM BURKE, PETER SODERBERG, RAYMOND O. HUGGENBERGER, RICHARD NIGON, KEVIN H. ROCHE, LYNN BLAKE, GERALD R. MATTYS, ROBERT FOLKES, BRYAN F. RISHE,<br><br>Defendants,<br><br>and<br><br>TACTILE SYSTEMS TECHNOLOGY, INC.,<br><br>Nominal Defendant. | C.A. No. 22-1063-GBW |

## MEMORANDUM ORDER

On May 24, 2022, Plaintiff Jack Weaver ("Plaintiff" or "Weaver") filed this derivative action (the "Derivative Action") against Defendants Brent Moen, William Burke, Peter H. Soderberg, Raymond O. Huggenberger, Richard Nigon, Kevin H. Roche, Lynn Blake, Gerald R. Mattys, Robert Folkes, and Bryan F. Rishe (collectively, the "Defendants") and on behalf of Nominal Defendant Tactile Systems Technology, Inc. ("Tactile" or the "Company"). D.I. 1. Plaintiff alleged that the Defendants, as officers, directors, and/or fiduciaries of Tactile, breached their fiduciary duties by engaging in misfeasance and non-feasance from May 7, 2018 through June 8, 2020 (the "Time Period") that resulted in harm to the Company and its shareholders. Following several months of settlement negotiations, the parties executed a final settlement

agreement (the "Settlement") on June 6, 2024, and Plaintiff filed an Unopposed Motion for Final Approval of Derivative Settlement, an Award of Attorneys' Fees and Expenses, and Service Awards seeking approval for the Settlement shortly thereafter. The Court held a settlement conference on August 28, 2024 (hereinafter, the "Settlement Hearing"). Now, having considered the record before it and for the reasons discussed below, the Court hereby finds that: (1) the Settlement is fair; (2) sufficient notice was provided to the Company's shareholders; (3) the attorneys' fees and expenses award of $485,000 is reasonable; and (4) Plaintiff and the Demand Shareholder are each entitled to a $5,000 service award. Accordingly, the Settlement is **APPROVED**.

## I. BACKGROUND

### a. Factual Background

Tactile is a medical technology company focused on developing medical devices for the treatment of vascular disease. D.I. 38, ¶ 2. The Company's chief product is the Flexitouch System, an at-home solution for lymphedema and chronic venous insufficiency ("CVI") patients. *Id.*, ¶ 3. Plaintiff alleges that, during the Relevant Time Period, the Defendants, acting as officers and directors of Tactile, caused the Company to make "illegal referral payments to trainers and doctors . . . in exchange for steering Flexitouch business to Tactile." *Id.*, ¶ 4. According to Plaintiff, the Defendants also caused the Company to: (1) "incorrectly" certify compliance with the government agency resolutions, including the medical necessity certification, in order to qualify for reimbursement; (2) make false representations in public filings about Tactile's business, the risks it faced from the Qui Tam action, its illegal referral practice, and the size of the market for the Flexitouch System; and (3) permit Insiders to regularly unload tens of millions of dollars of Tactile stock. *Id.*

2

Plaintiff filed the Derivative Action on May 24, 2022, on behalf of himself and on behalf of Nominal Defendant, Tactile, in the U.S. District Court for the District of Minnesota. *Id.*, ¶ 9. On August 9, 2022, the Derivative Action was transferred from the District of Minnesota to this Court upon a joint motion and stipulation of the parties. *Id.* Plaintiff's claims against the Defendants included: (1) violations of Section 14 of the Securities Exchange Act of 1934 (the "Exchange Act"); (2) breaches of their fiduciary duties as directors and/or officers of Tactile including the recovery of most insider trading profits; unjust enrichment; (3) seeking relief to void Defendants' compensation awards; and (4) for contribution under Sections 10(b) and 21D of the Exchange Act. *See generally id.* On February 10, 2023, the Defendants filed their motion to dismiss based on Rule 23.1 demand futility grounds and on Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") grounds for failure to state a claim. In response, Plaintiff filed an amended complaint on March 6, 2023. D.I. 38. On March 31, 2023, the Defendants moved to dismiss the amended complaint. D.I. 41.

### i. The Demand Shareholder

On February 10, 2022, a Demand Shareholder, Cory Griffin, issued a demand to inspect certain internal books and records of Tactile pursuant to Section 220. D.I. 55 at 4. Following meet and confer negotiations between the Demand Shareholder and the Company, Tactile produced approximately 1,821 pages of confidential, Board-level materials to the Demand Shareholder. *Id.* The Demand Shareholder's counsel subsequently reviewed and analyzed those materials and concluded that pre-suit demand on Tactile's Board was required and, by letter dated September 2, 2022, issued a Litigation Demand to Tactile's Board pursuant to Delaware law demanding that the Board commence an independent, good faith investigation into whether certain current and former Tactile directors and officers: (i) failed to ensure Tactile's remuneration plans complied with

federal and state law (i.e., were not based on payment of illegal kick-backs); (ii) caused Tactile to issue a series of materially false and misleading statements concerning Flexitouch and other matters; and/or (iii) participated in improper insider stock selling. *Id.*

### ii. The Settlement Terms

Plaintiff issued a settlement demand on the Defendants on November 11, 2022. *Id.* Shortly thereafter, on December 13, 2022, the Demand Plaintiff issued a settlement demand on the Defendants. *Id.* According to the parties, the terms of a comprehensive settlement were reached in October 2023 and included: (1) reforms to improve Tactile's internal controls regarding its compliance, to directly address the alleged lapses in Board and management-level supervision, and to update Tactile's insider trading policy (hereinafter, the "Reforms"); (2) attorney's fees and expenses in the amount of $485,000; and (3) a $5,000 service fee to Plaintiff and the Demand Shareholder each to be funded from the total fee and expenses amount. *Id.*

On June 7, 2024, the Parties executed a stipulation and filed it, together with its exhibits and a motion seeking preliminary approval of the Settlement, to the Court. D.I. 50, D.I. 51, D.I. 52. On June 27, 2024, the Court entered the Preliminary Approval Order. D.I. No. 53. Tactile filed with the SEC copies of the Notice and Stipulation, with its exhibits, as exhibits to a Form 8-K on July 5, 2024 and posted the same on the Investor Relations page of Tactile's website. D.I. 55 at 6-7. Then, on July 11, 2024, Tactile issued the Notice in a press release on PR Newswire. *Id.* During the Settlement Hearing, Plaintiff's counsel confirmed that they did not receive any objections or questions from shareholders regarding the Settlement. Hr. Tr. 2:23-3:4.

## II.   DISCUSSION

### a.  Fairness of Settlement Terms

Rule 23.1 provides that shareholder derivative suits may be dismissed only with court approval. Fed. R. Civ. P. 23.1. The district court has "wide discretion" in approving shareholder derivative suits. *See Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978). Under Federal Rule of Civil Procedure 23.1, parties to a shareholder derivative action must obtain the Court's approval to settle. Fed. R. of Civ. P. 23.1 ("A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders.").

While the shareholders' interest is relevant, "[t]he principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *Shlensky*, 574 F.2d at 147. In addition, district courts approving shareholder derivative settlements consider the factors applicable to approval of class action settlements. *See id.* ("[T]he standards annunciated in *Girsh v. Jepson* for class suit settlements have accordingly been applied, although perhaps with somewhat less rigor, in the settlement of shareholders' derivative suits.") (citing 521 F.2d 153, 156-57 (3d Cir. 1975)). The *"Girsh"* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the shareholders to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the derivative action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement agreement in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 156-57.

### i. *Girsh* Factor 1: complexity, expense and likely duration of litigation

The first *Girsh* factor considers the "probable costs, in both time and money, of continued litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 814 (3d Cir. 1995). "By measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably." *Id.* at 812. "Settlement is favored under this factor if litigation is expected to be complex, expensive and time consuming." *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. 04-374, 2008 WL 9447623, at *17 (D.N.J. Dec. 9, 2008) (internal citations omitted). This factor strongly favors approval of the Settlement.

Indeed, derivative actions are, by their very nature, "undeniably complex." *Unite Nat. Retirement Fund v. Watts*, 2005 WL 2877899 at *3 (D.N.J. Oct. 28, 2005). In this matter, Defendant filed a motion to dismiss challenging Plaintiff's claims on grounds that Plaintiff failed to demand futility against Tactile's board of directors and that Plaintiff failed to state a claim under Fed. R. Civ. P. 12(b)(6). D.I. 42 at 3. Plaintiff's counsel conceded that Plaintiff would need to survive both challenges to reach the discovery phase of litigation. Hr. Tr. 4:1-13. Rule 23.1 alone imposes a heightened pleading standard and would require Plaintiff to prove that futility was pled with "particularity." *See* Fed. R. Civ. P. 23.1. Given these potential impediments to Plaintiff's case, the Court agrees with the parties that the complexity, expense, and likely duration necessary to litigate the matter weigh in favor of the parties' negotiated settlement.

### ii. *Girsh* Factor 2: reaction of shareholders to settlement

"As a general rule, a small number of objectors weighs in favor of approval." *In re Impinj, Inc. Derivative Litig.*, No. CV 18-1686-RGA, 2021 WL 7209525, at *3 (D. Del. Nov. 22, 2021). Here, the parties confirmed that, despite the substantial size and sophistication of Tactile's shareholder base, no objections to the Settlement were received from shareholders. Hr. Tr. 2:23-

24. While this weighs in favor of approval of the Settlement, our courts are cautious not to place too much weight on this factor "because the typical investor may not possess the tools with which to value settlement relief comprised entirely of corporate governance reforms." *Impinj*, 2021 W: 7209525, at *3. Accordingly, the Court finds that the reaction of the shareholders slightly favors approval of the Settlement.

### iii. *Girsh* Factor 3: stage of the proceedings and amount of discovery completed

The third *Girsh* factor considers "the degree of case development" achieved prior to settlement negotiations and seeks to determine "whether [plaintiff's] counsel had an adequate appreciation of the merits of the case" before the derivative claims were settled. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). While the Court notes that the parties had not engaged in any discovery, "[e]ven settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties." *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 482 (D.N.J. 2012). Moreover, "[i]n some cases, informal discovery will be enough for [plaintiff's] counsel to assess the value of the class' claims and negotiate a settlement that provides fair compensation." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436-37 (3d Cir. 2016), *as amended* May 2, 2016.

Here, the record shows that Plaintiff received and reviewed internal documents following two books and records demands on the Company. Plaintiff's counsel also notes that Plaintiff accessed and reviewed substantial portions of the related Qui Tam Action and Securities Class Action in addition to SEC filings and several short seller reports. Hr. Tr. 6:7-23; *Id.* at 7:2-17. Having reviewed the related litigation and public documents, Plaintiff's counsel contends that they

acquired a deep understanding of the relative strengths and weaknesses of Plaintiff's case. *Id.* 6:7-23. Plaintiff's counsel also contend that their understanding of the case is evident in the agreed-upon reforms, which closely track the claims and issues alleged in Plaintiff's complaint. *Id.* Plaintiff's counsel adds that the Company allowed Plaintiff to lead settlement negotiations and showed a consistent willingness to adopt the reforms demanded by Plaintiff. *Id.*, 14:7-15. In light of this testimony, the Court finds that the stage of the proceedings weighs in favor of approving the Settlement.

### iv. *Girsh* Factors 4-6: risks of establishing liability and damages

The fourth and fifth *Girsh* factors consider the potential risks and rewards of litigating the action "rather than settling it at the current time." *GM Trucks*, 55 F.3d at 814-16; *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). As the Court noted *supra*, had the parties not agreed to the Settlement, Plaintiff would only reach the discovery phase of litigation if Plaintiff survived dismissal. Defendant contends that proving demand futility alone would constitute a challenge for Plaintiff, given that Delaware law requires the derivative shareholder to prove "that a majority of the directors on the Board were not sufficiently disinterested to consider a demand." *Impinj*, 2021 WL 7209525, at *4 ("There is a real risk that the derivative action would not have survived a motion to dismiss pursuant to Rule 23.1 . . . ."); Hr. Tr. 19:15-20:4. According to Defendants, the Company has continued to insist—both in this matter and in all related proceedings—that the Company's officers and directors were disinterested and did not engage in the alleged scheme to make illegal referral payments to trainers and doctors. Hr. Tr. 18:4-19:6. Defendants note that the Company litigated the related Securities Class Action to the eve of trial on similar grounds, and the Company maintained throughout litigation that any referral payments made to medical professionals were vetted and documented by the Company. *Id.* While the Court

need not decide the merits of Plaintiff's claims in considering the Settlement, the Court agrees that Defendants' willingness to litigate similar matters over several years shows that Defendants would likely do the same here. Thus, Plaintiff faced a substantial risk of prolonged litigation if he chose to forgo settlement. Additionally, both parties agree that the risk to the Company of continuing to litigate would not be substantial, as Plaintiff's claims were not expected to result in significant damages, and any damages awarded would be paid by the Company's insurance carrier. *Id.*, 19:7-14. Given the above, the Court finds that the fourth and fifth *Girsh* factors favor approval of the Settlement.

As to the sixth *Girsh* factor, it "is typically used to evaluate the risk of maintaining class certification in a class action." *Watts*, 2005 WL 2877899, at *4. Because "[a] derivative action does not present the same concern," this factor is neutral. *Id.*

### v. *Girsh* Factor 7: ability of defendants to withstand a greater judgment

The seventh *Girsh* factor "addresses whether Defendants could withstand a [monetary] judgment for an amount significantly greater than the [proposed] Settlement." *In re Johnson & Johnson*, 900 F. Supp. 2d at 484 (internal quotations omitted). The parties agree that Tactile is a healthy company that faced little to no monetary danger. Hr. Tr. 7:11-14. Also, where a monetary judgment will be paid by an insurance carrier, the Third Circuit has found that a defendant's ability to pay a larger settlement sum is not particularly damaging to the settlement agreement's fairness as long as the other factors favor settlement." *O'Brien v. Brain Research Labs, LLC*, No. 12-204, 2012 WL 3242365, at *19 (D.N.J. Aug. 9, 2012) (citing *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions,* 148 F.3d 283, 322 (3d Cir. 1998)). Thus, the seventh *Girish* factor does not weigh against approving the settlement.

### vi. *Girsh* Factor 8-9: range of reasonableness

The final two *Girsh* factors consider whether the settlement represents a "good value for a weak case or a poor value for a strong case." *In re Warfarin*, 391 F.3d at 538. These factors ask "'whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial.'" *Pro v. Hertz Equip. Rental Corp.*, No. 06-3830, 2013 WL 3167736, at *5 (D.N.J. June 20, 2013) (quoting *Prudential,* 148 F.3d at 322). Here, the parties contend that these factors weigh in favor of approval of the Settlement, as "the Reforms are specifically designed to improve Tactile's internal procedures and oversight controls, are tailored to ensure the alleged misconduct does not recur, and confer benefits upon Tactile and its shareholders that are immediate, substantial, and long lasting." D.I. 55 at 14. Having viewed the Reforms, the Court agrees that they address most, if not all, of the concerns raised in Plaintiff's complaint. *See* D.I. 56, Ex. 2. Thus, the Settlement leads to the best possible recovery for Plaintiff by "ensuring that the [R]eforms are implemented more expeditiously, and by eliminating future litigation costs." *In re Synchronoss Techs., Inc. S'holder Derivative Demand Refused Litig.*, No. 20-07150 (FLW), 2021 WL 5881638, at *7 (D.N.J. Dec. 13, 2021).

In sum, the *Girsh* factors weigh heavily in favor of the Settlement, as the Court is persuaded that the Reforms are fair and are in the best interest of Tactile's shareholders.

### b. Notice to the Class

"Nonparty shareholders must be given notice of a proposed settlement of a shareholder's derivative action." *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1317 (3d Cir. 1993). "Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1. "To satisfy due process, the notice 'must be sufficiently informative and give sufficient opportunity for response.'" *Id.*

(quoting *Kyriazi v. W. Elec. Co.*, 647 F.2d 388, 395 (3d Cir. 1981)). Here, the record reveals that Tactile shareholders were given sufficient notice. On July 5, 2024, Tactile filed with the SEC a Form 8-K attaching the Notice and posted the Notice and the Stipulation of Settlement (including attachments) on the "Investors" portion of its website. D.I. 54, ¶ 5. Shortly thereafter, on July 11, 2024, the Company issued a Summary Notice as a press release through *PR Newswire*. *Id.*, 11. During the Settlement Hearing, the parties confirmed that no shareholders objected to the Settlements and no shareholders raised questions or issues about its terms. Hr. Tr. 2:23-24. Given the above, the Court finds that the parties satisfied their notice obligations.

### c. Attorneys' Fees and Service Awards

"'[A]n award of counsel fees is only justified where the derivative action results in a substantial non-monetary benefit to the corporation.'" *Zucker v. Westinghouse Elec. Corp.*, 265 F.3d 171, 176 (3d Cir. 2001) (quoting *Kaplan v. Rand*, 192 F.3d 60, 69 (2d Cir. 1999)). In non-fund cases, district courts use a lodestar approach to evaluate such an award. *See, e.g., In re Schering-Plough Corp. Shareholder Der. Lit.*, No. 01-1412, 2008 WL 185809, at *4 (D.N.J. Jan. 14, 2008). The lodestar is first determined by calculating "the hours spent by the attorneys on their services and valu[ing] those services by multiplying the hours billed by a reasonable hourly rate." *Silberman v. Bogle*, 683 F.2d 62, 64 (3d Cir. 1982). The lodestar is then modified by two factors: the "contingent nature" of the lawsuit and "the extent, if any, to which the quality of an attorney's work mandates increasing or decreasing the amount to which the court has found the attorney reasonably entitled." *Id.* If the district court applies a multiplier to the lodestar, it must justify its decision to do so with reference to specific factors. *See In re Schering-Plough*, 2008 WL 185809, at *4 ("For the Court to grant a fee award subject to a lodestar multiplier, it must provide specific justification for doing so, such as the quality of representation, the benefit obtained for the class,

11

the complexity and novelty of the issues presented, and the risks involved.") (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

While the parties agreed to an attorneys' fees and expenses amount of $485,000, the evidence presented by Plaintiff shows an aggregate lodestar of over $600,000. Sq. Decl., ¶ 51 (noting that Plaintiff's counsel devoted 425 hours of service to this litigation, totaling a lodestar of $415,890.74); Stecker Decl., ¶ 6 (noting that Demand Shareholder's counsel's lodestar is $233,625.25). Because the parties have agreed to a fees payment below the aggregate lodestar amount, the collective lodestar of the Plaintiff's counsel and the Demand Shareholder's counsel results in a **negative multiplier**. Courts in this circuit have approved settlements with higher lodestar multiplier rates in comparable matters. *See MILTON PFEIFFER v. LAURENT ALPERT, ET AL. Additional Party Names: Beazer Homes USA, Inc.*, No. CV 10-1063, 2011 WL 13382329, at *4 (D. Del. Aug. 3, 2011) (approving a settlement where "[t]he Parties have agreed to a fee award of $400,000, which represents a multiplier of approximately 1.26. Plaintiff's Counsel undertook this litigation on a contingency basis, faced substantial risks in maintaining the case through trial, and achieved significant results for the Company through settlement"); *see also In re Schering-Plough*, 2008 WL 185809, at *6 (approving a 1.37 lodestar multiplier in a shareholder derivative suit because of the contingent nature of the suit and because the suit resulted in new corporate governance practices that would save the corporation money). Accordingly, the Court finds that the $485,000 attorneys' fees and expenses amount is fair and reasonable under the circumstances.

The Settlement also includes a $5,000 service award each to Plaintiff and the Demand Shareholder, which the parties agree will be paid from the attorneys' fees and expenses amount. "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they

12

provided and the risks they incurred during the course of the class action litigation." *Dewey v. Volkswagen of Am.*, 728 F.Supp.2d 546, 577 (D.N.J.2010) (internal quotation marks and citation omitted). "Where the payments [will] come out of the common fund independent of attorneys' fees, the Court must carefully review the request for fairness to other class members." *Dominguez v. Galaxy Recycling Inc.*, No. CV 12-7521 (LDW), 2017 WL 2495406, at *9 (D.N.J. June 9, 2017) (internal citations omitted). This is less of a concern where, as here, the service award is NOT coming out of the common fund. In such cases, courts commonly award incentive funds around $5,000. *See In re LG/Zenith Rear Projection Television Class Action Litig.*, No. 06–5609, 2009 U.S. Dist. LEXIS 13568, at *25, 2009 WL 455513 (D.N.J. Feb. 18, 2009) (approving incentive award that "is small, and will not decrease the recovery of other Class Members"); *Henderson v. Volvo Cars of N. Am., LLC*, No. CIV.A. 09-4146 CCC, 2013 WL 1192479, at *19 (D.N.J. Mar. 22, 2013) (awarding Plaintiffs $5,000-$6,000 each). Accordingly, to compensate for their time and effort devoted to this matter, the Court approves the service award to Plaintiff and the Demand Shareholder in the amount of $5,000 each.

\*\*\*

Therefore, at Wilmington this **4th** day of **September, 2024, IT IS HEREBY ORDERED** that:

1. The Court **GRANTS** approval of the Settlement;

2. The agreed-to Fee and Expenses Amount is **APPROVED**; and

3. The Service Awards in the amount of $5,000 each are **APPROVED**.

                                                     GREGORY B. WILLIAMS
                                                     U.S. DISTRICT JUDGE